UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM GIBBS, an individual; JOHN WAGNER, an individual,<br><br>  Plaintiffs,<br><br>vs.<br><br>RIVERS TRANSPORTATION GROUP, LLC, a Nevada corporation; RIVERS TRANSPORTATION GROUP, LLC, a Delaware limited liability company; GRYPHON HOLDINGS, LLC, a Texas limited liability company d/b/a/ GRYPHON AIRLINES; EARL D. GIBBS, an individual; THOMAS ROLL, an individual; JARED SUZUKI, an individual; RASHED ABDULLA AL TAMAR, an individual; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>  Defendants. | Case No.: 2:13-cv-935-JAD-NJK<br><br>**Order Granting Request to Enforce Venue Selection Clause and Transfer Venue (#10)** |

    This is a business dispute among several members of Gryphon Holdings, LLC, a Delaware company with its headquarters in Vienna, Virginia.[1] At the heart of the plaintiffs' claims lies Gryphon Holdings' operating agreement,[2] which contains a venue-selection clause that gives the company "the absolute right to select the venue in which disputes relative to" the

---

[1] *See* Docs. 1 and 10-1 at 44.

[2] *See generally* Doc. 1.

operating agreement "are to be heard, including the State of Delaware or the Principal Office of the Company."[3] Gryphon Holdings now seeks to invoke that "absolute right" to choose the venue for this dispute and moves this Court to enforce the venue-selection clause and transfer this case to the United States District Court for the Eastern District of Virginia, where Gryphon Holdings' stateside business operations are headquartered.[4] Alternatively, Gryphon Holdings asks the Court to dismiss the second through tenth claims under Rule 12(b)(6). As plaintiffs have not demonstrated that the venue-selection clause is invalid or that its enforcement would be unreasonable or unjust, the Court grants the motion to transfer venue and denies all other pending motions without prejudice to their reassertion in the new transferee forum.

## Background[5]

In January 2005, Plaintiff William Gibbs—a commercial pilot—and his brother Defendant Earl Gibbs conceived the idea of starting an airline to serve markets in the Middle East.[6] One of the earliest steps in the formation of the company was the creation of Rivers Transportation Group, Inc. ("RTGI") under the laws of the state of Nevada.[7] RTGI was reformed under Delaware law in May 2006.[8] Gryphon Holdings, LLC, a Delaware company, was then formed as a subsidiary of RTGI.[9]

Gryphon Holdings, in which plaintiffs William Gibbs and John Wagner, and defendants Earl Gibbs, Thomas Roll, and Abdullah Al Tamar are members, is governed by a Second

---

[3] Doc. 10-1 at p. 34, ¶ 13.2.

[4] Doc. 10.

[5] This description is intended only for general background and is not intended as any finding of fact.

[6] Doc. 1 at ¶ 28.

[7] *Id.* at ¶ 33.

[8] *Id.* at ¶ 36.

[9] Doc. 10-1 at 47.

Restated Operating Agreement.[10] The original Gryphon Holdings operating agreement merged RTI into Gryphon Holdings, which does business as Gryphon Airlines.[11] The company's American headquarters is located in Virginia, and its principal place of business is in Kuwait City, Kuwait.[12]

Plaintiffs William Gibbs and John Wagner filed suit against their co-members Roll, Al Tammar, and Earl Gibbs, along with RTGI, Gryphon Holdings, LLC, and Gryphon Holdings' Chief Financial Officer Jared Suzuki in the United States District Court for the District of Nevada, alleging claims for breach of fiduciary duty, fraud, an accounting, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and conversion, all arising from the operation of the airline through Gryphon Holdings.[13] They allege that venue is proper in this district because "the onset of the relationship between the parties as it relates to the legal entities named herein began with the establishment of a corporation organized under the laws of the state of Nevada, from which all subsequent transactions between the parties extended."[14]

The operating agreement that lies at the heart of this suit, however, contains a forum-selection clause that gives Gryphon Holdings the "absolute right" to select the venue for disputes related to the operating agreement:

> 13.2 <u>Governing Law</u>. This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the State of Delaware. The company shall have the absolute right to select the venue in which disputes relative to this Agreement are to be heard, including the State of Delaware or the Principle Office of the Company.[15]

---

[10] Doc. 10-1 at 2 & 4-44.

[11] Doc. 10-1 at 50.

[12] Doc. 1 at ¶ 9-11.

[13] *See generally* Doc. 1.

[14] Doc. 1 at ¶2.

[15] *Id*. at 34.

1    Gryphon Holdings now seeks to enforce that absolute right and moves this Court to
2  transfer this case to the United States District Court for the Eastern District of Virginia because
3  that is where Gryphon Holdings maintains its American headquarters,[16] and because all of the
4  allegations in the complaint relate to the Operating Agreement and actions that took place
5  outside of Nevada.[17] Plaintiffs acknowledge that "during the periods of time in question,
6  [Gryphon Holdings] did the vast, vast majority of its business in the countries of Kuwait and
7  Afghanistan,"[18] and that the witnesses are located in several states, including Virginia, and
8  certain foreign countries, but none are located in Nevada.[19] And they concede that "[a]lthough
9  the legal relationship between the parties began when a corporation was formed in an under the
10 laws of the state of Nevada, no party presently resides in that state."[20] Nevertheless, plaintiffs
11 muse that "Nevada is the perfect venue as no party can expect to enjoy any more 'home cooking'
12 than any other."[21] As plaintiffs have not persuaded the Court that Gryphon Holdings should be
13 denied its contractually agreed upon forum for this dispute, the Court finds that a venue transfer
14 to the Eastern District of Virginia is appropriate, grants the motion to transfer, and denies all
15 remaining motions without prejudice to their reassertion in the new forum.

**Discussion**

17   In diversity suits like this one, federal courts apply federal law to procedural issues
18 arising from forum selection clauses.[22] "Forum selection clauses are to be specifically enforced
19 unless the party opposing the clause clearly shows 'that enforcement would be unreasonable and

---

[16] Doc. 21 at 4.

[17] Doc. 10 at 3.

[18] Doc. 17 at 7.

[19] *Id.* at 7.

[20] *Id.*

[21] *Id.* at 8.

[22] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988).

unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"[23]  "Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"[24]  "The opposing party has the burden 'to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'"[25]

Defendants have offered a prima-facie-valid forum selection clause.  They've provided the Court with a full copy of the Operating Agreement, along with Thomas Roll's[26] Declaration attesting that the document is a true and correct copy of the operative agreement for the company.  It contains the merger document that makes it clear that RTGI merged into Gryphon Holdings "as the Surviving Entity."[27]  And both plaintiffs' signatures appear on the signature blocks of the Operating Agreement and the Merger Agreement.[28]  Plaintiffs do not dispute the authenticity or validity of this document.

Instead, they offer the general comment that the venue-selection clause contains "nothing definitive with regard to Delaware, Virginia, or any other state or possession, for that matter. Under the terms of the operating agreement, if Defendants believed it is in their best interests,

---

[23] *Id*. (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972)).

[24] *Id*. (quoting *Bremen*, 407 U.S. at 15).

[25] *Id*. (quoting *Bremen*, 407 U.S. at 18).

[26] Mr. Roll asserts that he is the Vice President of Gryphon Holdings, Doc. 10-1 at 2, and Plaintiffs do not dispute this fact, *see* Complaint at ¶ 17 ("Thomas Roll, from time to time, acted as Chief Financial Officer of Defendant Gryphon Holdings, LLC.")

[27] *Id.* at 51.

[28] *Id*. at 44, 56.

they could, just as easily, designate California, Nevada, or Texas."[29]  With so many options, they suggest that the Court should pick a venue "situated in one of the western states" because that region "would be most convenient, as the vast majority of the parties live in that area of the country."[30]  "Defendants point to nothing that would, or should, favor one venue over another."[31]

Plaintiffs' myopic argument blindly ignores—and asks the Court to similarly ignore—the elephant in this room: the forum-selection clause they contractually agreed to and—more importantly—its legal effect.  Yes, the clause leaves the choice of venue very broadly up to Gryphon Holdings.  And, yes, the breadth of the language in that clause means that Gryphon Holdings could pick just about anywhere for the litigation to proceed.  But that was the broad and "absolute right" that *these very plaintiffs* and their co-members (now adversaries) gave Gryphon Holdings, and they should not now be heard to complain about its scope.  When parties contract for a choice of venues, they take much of the discretion away from the district court to "favor one venue over another" in a venue fight.  And Gryphon Holdings has not blindly chosen just any venue at random; it selected the court in the district of its principal office, as was expressly permitted by the parties' venue agreement.

Plaintiffs' generalized references to 28 U.S.C. § 1404(a) add little to this discussion.  Although it is true that section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district,"[32] "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"[33] As the United States Supreme Court reiterated just last year in *Atlantic Marine Construction Company, Inc. v. District Court*, when a venue-transfer motion is premised on a

---

[29] Doc. 17 at 6-7.

[30] *Id*. at 7.

[31] *Id*. at 7.

[32] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013).

[33] *Id*. at 579 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

contractual selection clause, "adjustments" have to be made to the §1404(a) analysis: "the plaintiff's choice of forum merits no weight," the parties' "private interests" are irrelevant, and the original forum state's choice-of-law rules do not apply.[34] "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'"[35] The interests of justice are "served by holding parties to their bargain."[36] "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."[37]

Plaintiffs have not identified extraordinary circumstances or any legitimate reason not to transfer the case to Gryphon Holdings' chosen venue. The worst they say about Virginia is that "nothing binds this litigation to Virginia or to Delaware," even if that is where the company's "principal office" is located, and really, "one of the western states would be most convenient."[38] They acknowledge that the witnesses are located in several states, including Virginia, and in other countries, but none are located in Nevada;[39] and their suggestion that "Nevada is the perfect venue as no party can expect to enjoy any more 'home cooking' than any other,"[40] is, as defendants accurately note, "not only speculative, it 'reflects something of a provincial attitude regarding the fairness of" the Eastern District of Virginia.[41] Regardless, plaintiffs have not

---

[34] *Id*. at 582.

[35] *Id*. at 581 (quoting *Stewart*, 487 U.S. at 33).

[36] *Id*. at 583.

[37] *Id*. at 581.

[38] Doc. 17 at 7.

[39] *Id*. at 7.

[40] *Id*. at 8.

[41] *Manetti-Farrow*, 858 F.2d at 515.

offered this Court any persuasive reason—let alone the strong showing required—to disregard the forum selection clause that they expressly and contractually agreed to.

## Conclusion

Based on the foregoing and for good cause appearing, **IT IS ORDERED** that Defendants Gryphon Holdings, LLC's and Thomas Roll's Motion to Dismiss (Doc. 10) is granted in part:

- Defendants' request to transfer this case to the United States District Court for the Eastern District of Virginia is GRANTED.  the Clerk of Court is directed to transfer this case to the Eastern District of Virginia;
- All remaining requests in that motion (Doc. 10) are DENIED without prejudice to their reassertion in the transferee forum;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 11) and Motion to Strike (Doc. 12) are **DENIED** without prejudice to their reassertion in the transferee forum.

Dated this 28th day of March, 2014.

_____
Jennifer A. Dorsey
United States District Court Judge